READY MIX CONCRETE, INC., Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent.

No. CI-64-14.      Decided March 12, 1965.

36.

*Omar Cancio Sifre* for petitioner. *Donald R. Dexter* for the State Insurance Fund.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The Manager of the State Insurance Fund proceeded to reliquidate appellant's policy No. 17,186 for the years 1955–56 and 1960–61, both inclusive, collecting additional premiums in the amount of $19,724.10,[1] in the belief that the *vacation and sick-leave payments made* by appellant to its employees are subject to assessment for the purpose of fixing the insurance premium to be paid.

Appellant paid the said amount and informed the Manager of its inconformity with the reliquidation because the payment of the additional premiums was not based on a correct determination of law. In support of its position, appellant alleged that the aforesaid reliquidation is based solely on vacation and sick-leave payments made to the employees at a time the employees did not constitute any kind of *risk* since they were not working, and, consequently, that they were not entitled to the benefits provided by the Workmen's Accident Compensation Act. 11 L.P.R.A. § 1 *et seq.*

---

[1] A breakdown of the additional assessments is as follows:

| Years | Amount |
|---|---|
| 1955–56 | $2,380.61 |
| 1956–57 | 2,850.60 |
| 1957–58 | 2,635.08 |
| 1958–59 | 3,407.65 |
| 1959–60 | 4,048.42 |
| 1960–61 | 4,401.74 |
| | $19,724.10 |

After a number of communications between appellant and the Manager, the latter dismissed the former's contentions.
Feeling aggrieved by that decision, appellant appealed to the Industrial Commission, which under date of June 30, 1964, dismissed the appeal and affirmed the Manager's decision.

In that appeal appellant also alleged that since the provisions of the Act and the underlying public policy conflict with § 19–4 of the Regulation, 11 R.&R.P.R. § 19–4, the latter is null and void and that the Manager's action constitutes an ultra vires exercise of the governmental power.

On July 6, 1964, appellant filed with respondent Commission a motion for reconsideration of its decision of June 30, which was denied on July 14 of the same year.

We issued the present writ to review the Commission's actions.

As first error appellant contends that appellee erred in failing to decide that Rule IV (5) of Bulletin No. 8, Rules to Govern Workmen's Accident Compensation Insurance, 11 R.&R.P.R. § 19–4,[2] is void as being in conflict with the Act and the underlying public policy, and because the Manager's action in approving subd. 5 of the said Regulation constitutes an undue exercise of the governmental power.

1–2. The historical development of the workmen's accident compensation legislation in Puerto Rico reflects perhaps the clearest idea on the legislative intent respecting the determination of the basis for making the annual computation of the premiums.

Section 25 of Act No. 45 of April 18, 1935, provided in its second paragraph that the Manager was empowered to assess and levy annual premiums, determined in accordance with the preceding section, *on the total amount of wages paid* by the employer.

---

[2] "§ 19–4. Basis of premium
".

That provision was subsequently amended by Act No. 160 of May 9, 1942 (Sess. Laws, p. 856), using as basis for computing the annual premiums, *in addition to the total amount of wages* paid by the employer to its workers, contained in the former Act, *the salaries and other compensation* paid annually to the workers.

The legislative intent in that amendment was *to enlarge* the basis to be used in making the annual computation of the premiums, including therein *any other compensation earned* by the worker and paid by his employer.

■ The courts owe great consideration and respect to the administrative actions, interpretations, and regulations when passing upon dubious meanings in the laws, *particularly when such regulations have been contemporaneously approved with the enactment of the statute* and have been in force for a long time. *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870 (1945); *Brugal & Co.* v. *Buscaglia, Treas.*, 64 P.R.R. 860 (1945); Bernier, *Aprobación e Interpretación de las Leyes de Puerto Rico* 223; I Sutherland, Statutory Construction 310 (3d ed.). We do not believe that the fact that the Regulation to Govern the Administration of the State Insurance Fund was approved two months after the aforesaid Act No. 160 of 1942,[3] militates against the application to this case of the aforementioned jurisprudential doctrine. *Brugal & Co.* v. *Buscaglia, Treas., supra*.

---

"(e) Whenever employees are remunerated in whole or in part by bonuses, commissions, or on the basis of piece work, or any basis other than that of time actually engaged in work, or by store certificates, merchandise, credits, or any other substitute of money, such form of money shall be considered as wages or part of wages and shall be included in the actual remuneration earned and reported at the time of calculating the policy premiums. The statement of remuneration shall include extra wages for all overtime work, wages paid during holidays, vacation or sickness periods; but shall not, however, include special reward for meritorious achievements for discovery, nor mere gratuities, nor the result of voluntary profit sharing arrangements, unless they are a part of the contract of employment."

[3] Approved, signed, and promulgated by the Governor on July 1, 1942.

The persuasive force of that doctrine is enhanced in a situation where, as here, the Legislature has amended and reenacted the statute several times[4] without introducing any substantial change in the sections in question after notice of such administrative regulation. *Puerto Rico Ilustrado* v. *Buscaglia, Treas., supra.*

It is not logical to think that the legislative intent was to establish a rigid measure of assessment. On the contrary, flexible rules were established to enable the administrative agency to adopt regulations to evaluate reasonably, fairly, and equitably the workmen's earning capacity, for the purpose not only of assessing the premium but also of fixing the compensation of the employee upon sustaining a compensable accident, thereby rendering his economic situation less precarious. *Gene Autry Productions* v. *Industrial Commission,* 195 P.2d 143.

■■ There is nothing in the specific provisions of the Act nor in the underlying public policy which is contrary to or in conflict with Rule IV (5) of the Regulation. By virtue of the power invested in the Manager by the Act,[5] and for the purpose of executive interpretation and thus clarify §§ 19, 25, 26, and 27 of the Act (11 L.P.R.A. §§ 20, 26, 27, and 28), he chose to promulgate the regulation in question, placing on the phrase *"the total amount paid by the employer for wages, salaries, and other compensation,"* contained in §§ 25 and 26 *supra,* an interpretation consistent not only with the purposes of the Act[6] and its historical development, but also with

---

[4] Amended May 14, 1943, Act No. 162, § 1 (Sess. Laws, p. 524); June 24, 1960, Act No. 96 (Sess. Laws, p. 261), effective June 24, 1960; July 24, 1952, Act No. 6 (Sp. Sess. Laws, p. 10); June 26, 1959, Act No. 88 (Sess. Laws, p. 246), § 1.

[5] Subdivision (b), paragraph 13, § 6 of the Workmen's Accident Compensation Act (11 L.P.R.A. § 8).

[6] Section 23 of the Act imposes on the Manager the obligation to collect sufficient premiums to maintain a solvent fund and to set up a reasonable reserve.

the majority judicial construction of the concept and juridical nature of sick leave and vacation. *Hilton Hotels* v. *Minimum Wage Board*, 74 P.R.R. 628 (1953); *P. R. Auto Corporation* v. *District Court*, 73 P.R.R. 323 (1952); *In re Wil-Low Cafeterias*, 111 F.2d 429; *Panther Creek Mines* v. *Murphy*, 60 N.E.2d 217; *Swift & Co.* v. *Brown*, 132 So.2d 508; *Shelly* v. *National Carbon Co.*, 184 S.W.2d 686; *Keane* v. *Aetna Life Ins. Co. of Hartford, Conn.*, 91 A.2d 875; 2 Labor L.J. 742; 56 C.J.S. 526, § 96.

■ Furthermore, although the constitutional validity of the regulation in question was not directly challenged in *Monllor & Boscio* v. *Industrial Commission*, 89 P.R.R. 389 (1963), we said in our holding that that legal body had force of law.

Thus, there being no conflict between the statutory provisions, the underlying policy, and the administrative regulation, *Alemañy* v. *Industrial Commission*, 64 P.R.R. 845 (1945); *Ex parte Irizarry*, 66 P.R.R. 634 (1946); the regulation having been promulgated pursuant to the powers granted by law to the Manager, *Monllor & Boscio* v. *Industrial Commission, supra*, 11 L.P.R.A. § 8; the provisions thereof being reasonable; and the same having been issued in accordance with the established procedure, we must hold that the provisions under consideration in this case are valid and binding. Davis, Administrative Law Text 87, § 503.

3. Although what we have so far considered would be sufficient to quash the writ issued by us, we deem it advisable to discuss the other errors assigned by appellant.

Appellant maintains that since the accidents sustained by its employees while on vacation and sick leave are not compensable, the payments which it made for such periods should not be assessable either; that during such periods the employees are not exposed to any risk, and that the basis for computing the employer's contribution to the Fund should be the compensation paid for *services rendered*.

■ As a general rule, accidents sustained by employees while on sick leave and vacation are not compensable since they do not arise in the course of employment. 1 Campbell, Workmen's Compensation 136; 7 Schneider, Workmen's Compensation 429; *Barragar* v. *Industrial Commission*, 238 N.W. 368; 78 A.L.R. 679. However, situations may arise where, notwithstanding the occurrence of the accident while on vacation, the injured may be entitled to compensation by reason of the activities performed by him during such period, or at the commencement or end thereof, for the benefit of his employer, thereby giving rise to the accident in the course of employment. *Irvin Neisler & Co.* v. *Industrial Commission*, 178 N.E. 357; *Standard Oil Co.* v. *Smith,* 111 P.2d 132; *Messer* v. *Manufacturers Light & Heat Co.*, 106 Atl. 85; *Aetna Life Ins. Co.* v. *Schmiedeke*, 213 N.W. 292.

On the other hand, appellant's argument of absence of risk is based on the false premise that all employees take or enjoy vacation periods, when the fact is that many times the practice is *to pay them in cash* either because of the employee's economic needs, or because the capacity of the commercial or industrial activity, the lack of skilled workers, or because the nature of the employment require his continuous presence. *P.R. Auto Corporation* v. *District Court, supra.*

■ However, whether or not a labor accident occurring during sick leave or vacation is compensable is no basis to assert that for that reason the payments made to the employees for such periods are not assessable. The assessment is made for payments made as compensation for *services rendered* by the employees to their employers. The fact that payment is made during a period in which the employee is not working because he is resting, or because he is sick, does not mean that he has not rendered services equivalent to such payments. What has been done is *to defer* such pay-

ment. Thus, in *Keane* v. *Aetna Life Ins. Co. of Hartford, Conn., supra,* it is said:

"Vacation pay and severance pay *are earned.* They depend upon the *quantum of services performed.* That for some purposes, as for example in labor negotiations, the parties may classify such pay as fringe benefits rather than basic wages, does not in itself destroy the affinity between them and work performed, and accordingly their proper inclusion within the generic term 'wages.'" (Italics ours.)

■ Although the labor legislation in force does not grant to the workers the right to enjoy vacations, the latter may arise from a mandatory decree, a collective agreement, or a private contract between the parties.[7] *Peralta* v. *Peninsular Life Ins. Co.,* judgment of June 4, 1964, *Rev. Col. Abo.* No. 104; *Hilton Hotels* v. *Minimum Wage Board, supra.* Once such benefits are granted in the aforesaid legal bodies, they are rights demandable before the courts, and if they are not granted or enjoyed, it is the employer's duty to pay them in cash. *P.R. Auto Corporation* v. *District Court, supra.*

■ In view of the foregoing considerations, we hold that the decision of respondent Commission was correct in considering the vacation and sick-leave pay as *additional salaries* subject to assessment for the annual levy of premiums. Anno., *Vacation Pay Clause,* 30 A.L.R.2d 351; *In re Wil-Low Cafeterias, supra;* 56 C.J.S. 526, § 96; *Sokalaff* v. *New York State Dept. of Labor, etc.,* 192 N.Y.S.2d 588; *Knaszak* v. *Buffalo Forge Company,* 225 N.Y.S.2d 600; *France* v. *City of New Orleans,* 92 So.2d 472.

For the reasons stated, the writ issued will be quashed.

---

[7] They may also arise from grants or benevolent acts of the employer for the purpose of affording greater incentive, in which case they are not enforceable at law. Whether the practice of granting them creates an expectancy in the worker and we may apply to them the theory stated in connection with bonds in *Monllor & Boscio* v. *Industrial Commission, supra, quaere.*